Judge Terri F. Love
I aThis appeal arises from the trial court’s granting of defendant’s motion to quash the charge of malfeasance. We find that the trial court did not err by granting the motion to quash because there was no violation of an affirmative duty by the defendant, which is required for malfeasance. The judgment of the trial court is affirmed.

FACTUAL BACKGROUND

On September 26, 2012, a fatal fire occurred at the Willow Creek Apartments (“Willow Creek”), formerly known as the Rusty Pelican Motel, in Grand Isle, Louisiana. Two people were killed in the fire. This appeal concerns allegations that on September 27, 2012, Nunzio Marehiafava, a now retired district fire marshal, falsified a daily activity report to make it appear that he performed a follow-up inspection at Willow Creek on May 25, 2012. It is alleged that Mr. Marehiafava destroyed the original activity log from that date and created a new one documenting traveling to Grand Isle to inspect the motel.
The investigation into this matter was conducted by Inspector Heath Humble of the Office of the State Inspector General *1154 after a complaint was received from the Metropolitan Crime Commission (“MCC”). The MCC complaint alleged that [3the Office of the State Fire Marshal (“SFM”) received a complaint regarding Willow Creek. The SFM complaint alleged that Willow Creek had deplorable conditions and fire safety hazards prior to the fire that occurred on September 26, 2012. Further, the MCC complaint contended that Mr. Marchiafava failed to act on the information.
Inspector Humble then conducted an investigation to see what efforts SFM undertook to investigate the complaints that were received. Inspector Humble collected records from SFM, which showed that Mr. Marchiafava was tasked with inspecting Willow Creek. The records showed that Mr. Marchiafava inspected Willow Creek on April 2, 2012, and again on May 25, 2012.
Mr. Marchiafava documented his purported trip to Grand Isle to inspect Willow Creek by sending a report via email to his supervisor on September 27, 2012, the day after the fire. In his special report/email, Mr. Marchiafava stated that on the morning May 25, 2012, he conducted a follow-up investigation, but that he was unable to locate anyone in the building and the management office was closed, but filled with storage material. Mr. Marchiafava stated that he spoke to the Chief of the Grand Isle Fire Department to inform him of his results. Mr. Marchiafava learned that the Chief had tried unsuccessfully on a number of occasions to contact Jefferson Parish Code Enforcement to schedule an inspection.
Inspector Humble sought to confirm that these inspections occurred by examining odometer readings from Mr. Marchia-fava’s vehicle. Inspector Humble identified a discrepancy with respect to the odometer readings from May 25, 2012. Inspector Humble then obtained Mr. Marchiafava’s cell phone records, which documented that Mr. Marchiafava’s cell phone never left the New Orleans area on May 25,2012.
| ¿Inspector Humble also interviewed Mr. Marchiafava’s secretary/administrator Rosalyn Philips, who told him that she helped Mr. Marchiafava change the date on the daily activity report in question.
Inspector Humble applied for and obtained a warrant from the Nineteenth Judicial District Court for the Parish of East Baton Rouge for Mr. Marchiafava’s arrest for the crime of filing or maintaining false public records in violation of La. R.S. 14:133.
Mr. Marchiafava alleges that this case is a misunderstanding. He contends that he neglected to issue the report regarding his second attempt at inspecting Willow Creek prior to the fire, and when he did issue his report, he entered the wrong date, erroneously stating that his inspection occurred on May 25, 2012. Accordingly, Mr. Mar-chiafava contends that the charges stem from a simple clerical error.

PROCEDURAL HISTORY

Mr. Marchiafava was charged with filing false public records and malfeasance in office. Mr. Marchiafava filed a motion to quash the bill of information, which was withdrawn. The State responded to Mr. Marchiafava’s request for bill of particulars. A hearing was held on Mr. Marchiafa-va’s motions to suppress statement and evidence as well as his request for a preliminary examination. The trial court took that matter under advisement. Mr. Mar-chiafava filed a second motion to quash and memorandum in support. He alleged that venue was improper and that the charges were legally insufficient.
The trial court denied the motion to quash and the motions to suppress evi *1155 dence and statement. Thereafter, Mr. Mar-chiafava sought supervisory review from this Court. This Court denied his application on the showing made. State v. Marchiafava, 15-0018, unpub., (La. App. 4 Cir. 3/10/15).
Subsequently, Mr. Marchiafava filed a third motion to quash[1] relying in large part on Hanson v. Steven Caruso, Willow Creek, L.L.C., 15-449 (La. App. 5 Cir. 12/23/15), 182 So.3d 1187, a parallel civil case filed by survivors of the two occupants who died in the Willow Creek fire.[2] Mr. Marchiafava also alleged that the State had not sufficiently responded to the bill of particulars.
The State filed a supplemental response to Mr. Marchiafava’s motion for bill of particulars, wherein it specified that the basis for the charge of malfeasance in office was Mr. Marchiafava’s falsifying records and submitting a false report. A hearing was held, and counsel for Mr. Marchiafava called two state fire marshals, who testified about Mr. Marchiafava’s responsibilities in connection with Willow Creek. The trial court conducted a second hearing on the matter. Thereafter, Mr. Marchiafava filed a supplemental and amending motion to quash in response to the supplemental bill of particulars, maintaining that the charges against him subjected him to double jeopardy. The same day that the State filed a response brief, the trial court granted Mr. Marchiafava’s motion and quashed the charge of malfeasance in office. The State’s appeal followed.

MOTION TO QUASH

The State, asserts that the trial court erred in granting Mr. Marchiafava’s motion to quash because he was properly charged with violating lawful .duties. La. C.Cr.P. art. 532 provides that “[a] motion to quash may be based on” the fact that “[t]he indictment fails to charge an offense which is punishable under a valid statute.” “In considering the motion to quash, the district court accepts as true .the |fifacts contained in the indictment or bill of information and in the bill of particulars, and determines as a matter of law and from the face of the pleadings, whether a crime has been charged.” State v. Petitto, 10-0581, p. 4 (La. 3/15/11), 59 So.3d 1245, 1248. A trial court’s ruling granting or denying a motion to quash is renewable for an error of law, thus requiring the use of the de novo standard of review. State v. Ancalade, 14-0739, p. 10 (La. App. 4 Cir. 1/14/15), 158 So.3d 891, 897. In deciding a motion to quash a bill of information, a “trial court is not authorized to make any factual determinations.” State v. Landry, 13-1030, p. 5 (La. App. 4 Cir. 5/7/14), 144 So.3d 1078, 1082. Likewise, factual defenses going to the merits of the charge are not proper grounds to be considered when deciding a motion to quash. Id.
“La. Const. Art. I, § 13 requires the state to inform the accused in a criminal prosecution of the nature and cause of the accusation against him.” State v. DeJesus, 94-0261, p. 3 (La. 9/16/94), 642 So.2d 854, 855. “The state may provide the information in the indictment alone, or in its responses to a defense request for a bill of particulars.” Id. “The purpose of the bill of particulars is to inform the accused more fully of the nature and scope of the charge against him so that he will be able to defend himself properly and to avoid any *1156 possibility of ever being charged again with the same criminal conduct.” Id.
Mr. Marchiafava was charged with malfeasance in office, which is defined in pertinent part by La. R.S. 14:134 as:
A. Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform atiy duty lawfully required of him, as such officer or employee; or
|7(2) Intentionally perform any such duty in an unlawful manner; or
The bill of information in the present case charged that between May 1, 2012, and September 30, 2012, Mr. Marchiafava “committed malfeasance in office.” The bill of information set forth no additional facts.[3]
In its supplemental response to Mr, Marchiafava’s motion for a bill of particulars, the State further alleged that the prosecution is based upon the following statutes:
A. Louisiana Revised Statute .14:133, with respect to filing a false public record, to wit, a State Fire Marshall Report with knowledge of its falsity.
B. Louisiana Revised Statute 14:134, insofar as, in falsifying records and submitting a false report, defendant-
i. intentionally performed in an unlawful manner duties required by, and inherent in the nature of, his former office, contrary to his duty as a public employee under Article 10, Section 30 of the Louisiana Constitution of 1974 to support the laws of this state;
ii. . intentionally failed to comply with an order or orders of the State Fire Marshall, or authorized delegate(s) of the same, contrary to his duty as an enforcement agent of the State Fire .Marshal, under Louisiana Revised Statute 40:1591, to enforce all laws under the jurisdiction of, and lawful orders issued by, the State Fire Marshal; and
iii. intentionally failed to comply with his duties under Article 10, Section 30 of the Louisiana Constitution of 1974 and Louisiana Revised Statute 40:1591 by interfering with the State Fire Marshal’s fulfillment of statutory obli-. gations, to wit:
|8a. to direct investigations that shall determine, insofar as possible, the cause of and circumstances surrounding each fire that occurs within the state, under Louisiana Revised Statute 40:1566;
b. to keep a record of facts and circumstances surrounding each fire that occurs within the state, under Louisiana Revised Statute 40:1566; and c. to investigate fires that result in human death, under Louisiana Revised Statute 40:1568.1.
In Petitto, 10-0581, pp. 4-5, 59 So.3d at 1249, the Louisiana Supreme Court stated:
One key phrase in the statute is “any duty lawfully required of him.” This phrase makes it clear that before a public officer or employee can be charged with malfeasance in office, there must be *1157 a statute or provision of law which imposes an affirmative duty upon him. State v. Perez, 464 So.2d [737] at 741 [ (La. 1985) ], citing State v. Passman, 391 So.2d 1140, 1144 (La. 1980), As this court has explained, this duty must be expressly imposed by law upon the officer (or employee) because the officer (or employee) is entitled to know exactly what conduct is expected of him in his official capacity and what conduct will expose him to criminal charges. State v. Perez, 464 So.2d at 741.
La. Const. Art. X, § 30 provides:
'Every official shall take the following oath or affirmation: “I, ..., do solemnly swear (or affirm) that I will support the constitution and laws of the United States and the constitution and laws of this state and that I will faithfully and impartially discharge and perform • all the duties incumbent upon me as ..., according to the-best of my ability and understanding, so help me God.”
In Hanson, the plaintiffs sued SFM and Mr. Marchiafava, alleging that Mr. Mar-chiafava failed to inspect a building that later caught fire causing the deaths of two people and falsified reports regarding his investigation of the building. 15-449, pp. 2-3, 182 So.3d at 1189, “Subsequently, SFM and [Mr. Marchiafava] filed 19an exception of no cause of action on the basis that the petition failed to allege a duty owed and/or breached by” SFM and Mr. Marchiafava to these particular plaintiffs. Id., 15-449, p. 3, 182 So.3d at 1190. The Fifth Circuit agreed, finding that, pursuant to La. R.S. 40:1563(0, the SFM through its employee, Mr. Marchiafava, was “by definition” performing “a discretionary function,” which exempted it from liability. Id., 15-449, p. 6, 182 So.3d at 1191, The Fifth Circuit summarized relevant portions of La. R.S. 40:1563(0[4] as follows:
The fire marshal shall not conduct or supervise inspections in all remaining matters where a fire .prevention bureau is properly certified unless specifically requested by the fire prevention bureau or the local governing body of that jurisdiction or upon complaint of any citizen. The fire marshal may, at his discretion, report any complaint received from a citizen to the appropriate fire prevention bureau and the fire marshal may conduct a joint inspection, with the fire prevention bureau.
(internal punctuation omitted). A plaintiff asserted that:
[T]he trial court erred in failing to find that the “acts and omissions by [the inspector], in fraudulently and criminally preparing reports for which he never did investigation” constituted “criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.”

Id.

The Court of Appeal disagreed with the plaintiffs and found that Mr. Marchiafava’s “subsequent act is an exception to discretionary immunity,” reasoning as follows:
First, the record reveals that the inspector did inspect the Willow Creek premises in April. Further the record reveals that, after the fire in September, the inspector prepared a faise log entry that reflected that he made a | ^second trip to the premises. Although the report was falsified, the misconduct occurred subsequent to the fire, and, more importantly, the preparation of a fraudulent report was not a contributing cause of the fatal fire. We find that this conduct is not sufficient to trigger the exception to dis *1158 cretionary immunity. Accordingly, the trial court’s decision maintaining SFM’s and the inspector’s exceptions of no cause of action is affirmed.
Id., 15-449, pp. 6-7, 182 So.3d at 1192.
In the present matter, the trial court accepted the Hanson court’s reasoning and granted the motion to quash on the basis that “[ujnder the facts alleged, the Petitoner’s conduct was factually discretionary, thereby making it impossible to obtain a lawful conviction.”
The State contends that Hanson is not dispositive because, in Hanson, Mr. Mar-chiafava’s “duty of general care to the general public” was at issue while here “it is the defendant’s duties by law” that is at issue. We find this is a distinction without a difference. Mr. Marchiafava’s statutory duty or “duties by law” to perform an inspection is defined by La. R.S. 40:1563(0), on which the Hanson court based its decision. The crime of malfeasance in office requires the violation of “an affirmative duty.” Petitto, p. 4, 59 So.3d at 1249. Here, Mr. Marchiafava, in failing to inspect Willow Greek, failed to perform a discretionary duty. By definition, this conduct cannot constitute malfeasance in office. Hanson is directly on point, and the State’s assertion lacks merit or persuasion.
Additionally, the State failed to specify that Mr. Marchiafava’s conduct in failing to perform the inspection as ordered is what gave rise to malfeasance. The bill of particulars asserted that the offense of malfeasance was premised on Mr. Mar-chiafava’s conduct of “falsifying records and submitting a false report.” Likewise, at the hearing on Mr. Marchiafava’s initial motion to quash, the State fy specified that the malfeasance was tied to the filing of the report and that it was not related to violating any other public duty, such as a duty to respond to the complaint and inspect the location.[5] As noted previously, the State omitted that portion of the bill of particulars specifying “falsifying records and submitting a false report” as the conduct that violated Mr. Marchiafava’s affirmative lawful duty from its appeal brief.
In State v. Deville, 94-0241 (La. App. 4 Cir. 10/27/94), 644 So.2d 1117, the defendant police chief was charged with malfeasance in office after instructing a town police officer to commit perjury, committing battery on a prisoner in his custody, and illegally arresting and falsely imprisoning a citizen, among other things. In Deville, the bill of information alleged that the police chief committed malfeasance in office by:
intentionally failing to perform the duties lawfully required of him as said officer and intentionally performed said duties in an unlawful manner. More specifically, as Chief of Police he is sworn to support the Constitution and Laws of the United States and the Constitution and Laws of Louisiana and to faithfully and impartially discharge and perform all the duties incumbent upon him as Chief of Police of the Town of Washington.
94-0241, p. 4, 644 So.2d at 1120.
This Court, in Deville, concluded that the reasoning of State v. Coker, 625 So.2d 190 (La. App. 3rd Cir. 1993), was analogous and relied on the Coker court’s analysis of the affirmative duties that are inherent in the office of Chief of Police in reaching its decision. This Court’s discussion follows:
*1159 | jgln appealing his conviction and sentence, Coker, like defendant in the instant case, vigorously argued his oath of office did not delineate any affirmative duty not to batter suspects and thus there was no basis for a malfeasance conviction. In rejecting defendant’s argument, the Court reasoned:
“... the defendant contends that a public official can never be convicted of malfeasance unless a specific criminal statute exists which defines the conduct as_malfeasance. In the defendant’s case, he asserts that he cannot be found guilty of malfeasance for maliciously battering helpless prisoners unless a statute exists which requires that ‘law enforcement officials shall ensure the safety, health and well being [sic] of all citizens or persons in their presence or custody, and ensure no batteries are committed upon the person who is in their custody or presence.’ Utilizing the defendant’s reasoning, every conceivable function and duty of a public official would have to be specifically included in a prohibitory statute in order to successfully ‘notify’ the official of his potential liability for malfeasance. This is clearly impossible in practice and was obviously not the intent of the legislature when enacting the malfeasance statute.
In fact, only two offenses are specifically delineated in Louisiana as constituting malfeasance. See La.R.S. 14:134.1 and La.R.S. 14:134.2. In all other cases, the specific duties required to support [a] conviction for malfeasance are derived from other sources.
Specific criminal statutes and ordinance[s] have been used to support malfeasance convictions, (citations omitted) ...
⅜ ⅜ ⅜* ⅝⅞ ⅝* ⅜
The oath of office has also been held to independently express certain affirmative duties. In Perez, supra, a judge was found to be under an express affirmative duty not to interfere with or obstruct the grand jury, | abased on his oath of office. In State v. Perret, 563 So.2d 459 (La. App. 1st Cir.1990), an employee of the Department of Wildlife and Fisheries was found to have an express affirmative duty not to interfere with , the execution of provisions of La.R.S. 56:433, pursuant to his oath of office.
5jí ⅜ ⅜ ⅜ ⅜ ⅛⅞
When police officers use unreasonable force, and the police conduct shows reckless and callous indifference to the rights of others, that conduct violates constitutional prohibitions against unreasonable seizures ... Certainly, when the chief performed in this fashion, he did so unlawfully, misused and abused his power, and thus, is guilty of the misuse and malfeasance of his office.
⅜ ‡ ⅜ ⅜ ⅜ ⅜
Clearly, the malfeasance statute requires that the offender be acting in his official capacity and engaged in the performance of a duty which is required by law, in order to support conviction. The jurisprudence indicates that prosecution for malfeasance is reserved for those cases in which a public official has blatantly abused the authority of his office and violates the public trust by his direct, personal acts or failure to act.” Id. at 195, 197, 198.
We adopt the above quoted language as our legal basis for concluding that the bill of information which included reference to defendant’s oath of office properly charged the offense of malfeasance in *1160 office. In addition we note the elementary fact that certain affirmative duties are inherent in the nature of the office. Certainly police officers have the duty not to break the law when performing the duties of their office. Our review of the evidence convinces us that it is sufficient to sustain the jury’s conclusion that defendant is guilty of malfeasance.
Deville, 644 So.2d at 1121-23.
In State v. Ferguson, 14-1305, 14-1321, 14-1334 (La. App. 4 Cir. 9/2/15), 176 So.3d 449, this Court relied on Coker and Deville to find that a correctional officer’s oath of office includes the duty not to break the law when performing the duties of his office. This Court also found that committing a battery on or becoming a principal to the commission of a battery upon a juvenile inmate in the officer’s care was sufficient to constitute the crime of malfeasance in office as the bill of information and the bill of particulars alleged. Ferguson, 14-1305, 14-1321, 14-1334, p. 18, 176 So.3d at 461.
Arguably, as seen in the jurisprudence referenced above, the supplemental bill of particulars implicitly sets forth a violation of Mr. Marchiafava’s duty regarding his oath of office. Mr. Marchiafava’s response to the filing of the supplemental bill of information was to contend that the prosecution violated double jeopardy principles.[6] Mr. Marchiafava never asserted that he could not commit malfeasance in office by filing false public records in violation of La. R.S. 14:133. However, the State failed to assert this as an error on appeal, which limited Mr. Marchiafava’s response and precludes our discussion. See Rule 1-3, and Rule 2—12.4(B)(4), Uniforms Rules, Courts of Appeal.
Nonetheless, the crime of malfeasance in office requires the violation of an affirmative duty, which does not exist in the present case. We find that Mr. Marchiafava failed to perform a discretionary duty, which cannot constitute malfeasance in office. Further, the State failed to specify that Mr. Marchiafava’s conduct, in failing to perform the inspection as ordered is what gave rise to malfeasance. As such, we find the State failed to present a meritorious assertion that the trial court erred by granting’ Mr. Marchiafava’s motion to quash. The | ^judgment is affirmed.

DECREE

For the above-mentioned reasons, we find' that the trial court did not err by granting Mr. Marchiafava’s motion to quash. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED
EDWARDS, J., DISSENTS AND ASSIGNS REASONS

. Mr. Marchiafava’s third motion to quash is the subject of this appeal.

. In Hanson, the court ruled that Mr. Mar-chiafava and SFM did not have a mandatory duty to inspect Willow Creek. 15-449, pp. 5-6, 182 So.3d at 1191.

. Mr. Marchiafava was also charged with La, R.S. 14:133, which provides in pertinent part:
A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or;rule, with knowledge of its falsity, of any of the following:
(1) Any forged document.
(2) Any wrongfully altered document.
(3) Any document containing a false statement or false representation of a material fact,

. The Fifth Circuit’s quotation of La. R.S. 40:1563(C) did not include the full language of the statute. We have omitted the quotation marks accordingly.

. The prosecutor stated:
The malfeasance in office is, in fact, Mr. Marchiafava's filing of a record that was not accurate for what actually transpired. That is what the investigator testified to, and for these reasons, the State would pray that you deny the motion to quash and we proceed with this case.

. Mr. Marchiafava states that because the trial court avoided granting the motion to quash on double jeopardy grounds, any discussion or argument regarding the application of double jeopardy is not presently before the court. We agree,